UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OSCAR ACUNA VEGA,

                      Petitioner,

    v.

JULIO HERNANDEZ, et al.,

                      Respondents.

Case No. C26-2005-SKV

ORDER GRANTING IN PART
PETITION FOR WRIT OF HABEAS
CORPUS

## I.      INTRODUCTION

Petitioner Oscar Acuna Vega, who is currently detained by U.S. Immigration and Customs Enforcement (ICE) at the Northwest ICE Processing Center (NWIPC) in Tacoma, Washington, brings this 28 U.S.C. § 2241 habeas action through counsel seeking release from detention.  Dkt. 1.  Respondents filed a return to the petition, Dkt. 5, together with supporting declarations, Dkts. 6-7.  Petitioner did not file a reply.  Now, having considered the parties' submissions and the governing law, the Court GRANTS the petition, ORDERS that Petitioner be released from detention within twenty-four (24) hours, and addresses additional requests for relief below.

/ / /

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 1

## II.    BACKGROUND

Petitioner is a native and citizen of Venezuela. Dkt. 6, ¶3. He entered the United States on August 29, 2023, encountered United States Border Patrol (USBP), and requested asylum. Dkt. 1-2, ¶¶1-2; Dkt. 6, ¶4. On August 31, 2023, USBP served Petitioner with a Notice and Order of Expedited Removal, charging him as inadmissible under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA), Dkt. 6, ¶5; Dkt. 7, Ex. 1, which is codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I). Petitioner expressed a fear of removal to Venezuela and, on October 11, 2023, United States Citizenship and Immigration Services (USCIS) found Petitioner established a reasonable possibility of future torture should he return to Venezuela. Dkt. 6, ¶¶6-7. On October 16, 2023, USCIS served Petitioner with a Notice to Appear (NTA), charging him under Sections 212(a)(7)(A)(i)(I) and 212(a)(6)(A)(i) of the INA, *id*., ¶8; Dkt. 7, Ex. 2, the latter of which is codified at 8 U.S.C. § 1182(a)(6)(A)(i).

Petitioner had been held in immigration custody since his initial encounter with USBP. Dkt. 6, ¶9. On October 18, 2023, ICE Enforcement and Removal Operations (ERO) authorized an interim parole release under INA Section 212(d)(5)(A), *id*., ¶9; Dkt. 7, Ex. 3, which is codified at 8 U.S.C. § 1182(d)(5)(A). The notice authorizing parole provided that it was valid for one year from the date on the notice and would "automatically terminate upon [his] departure or removal from the United States or at the end of the one-year period unless ICE provides [him] with an extension at its discretion." Dkt. 7, Ex. 3 at 1. A subsequent page states that Petitioner had been released from custody "pending a final decision in [his] exclusion/deportation hearing", with no reference to an expiration date. *Id.* at 2.

The notice also stated that Petitioner's parole was "conditioned on [his] compl[iance] with the terms and conditions of [his] release." *Id*. at 1. The conditions imposed included that

Petitioner "report for every scheduled hearing before the immigration court and every appointment as directed by ICE", and that he enroll and "successfully participat[e] in an Alternatives to Detention (ATD) program[,]" which would include electronic monitoring. *Id.* at 1, 3. The notice advised that failure to comply with the ATD requirements "will result in a redetermination for your release conditions or your arrest and detention." *Id*. at 3.

Petitioner was released from immigration custody, in Texas, on October 19, 2023. Dkt. 6, ¶11. Upon his release, he traveled to and checked in with ICE in Washington. Dkt. 1-2, ¶¶6-7. ICE installed an app on his phone and advised that he must take and submit a weekly photo, that home visits would occur monthly, either in person or on video calls, and that he must attend in-person ICE visits once a month. *Id*., ¶8.

An order from an Immigration Judge (IJ) in San Antonio, Texas, dated March 5, 2024, found that Petitioner failed to appear for a scheduled immigration hearing, and issued an *in absentia* removal order to Venezuela. Dkt. 6, ¶12; Dkt. 7, Ex. 4. On October 25, 2024, Petitioner filed a motion to re-open his immigration case and, on November 4, 2024, the IJ granted that motion. Dkt. 6, ¶13.

Respondents aver that, at an April 28, 2026, check-in in Tacoma, Washington, ERO "noticed 18 prior violations while Petitioner was on ATD[,]" and identify the following seventeen alleged violations: missed biometric check-ins on November 8, November 16, December 6, and December 7, 2024, and on January 17, April 4, May 9, May 16, June 13, and July 25, 2025; a failed biometric match on March 19, 2025; location services showing as disabled on April 25, 2025; and five failed home visits (meaning Petitioner was not present when an ERO officer arrived at his home) on April 16, May 14, September 3, October 29, and November 16, 2025. *Id*., ¶14. They provide a document listing eighteen violations, which

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 3

includes, in addition to the above, a missed biometric check-in on November 10, 2023. Dkt. 7, Ex. 6 (also differing with respect to two dates, including a November 15, 2024 missed biometric check-in and a November 26, 2025 failed home visit).  Petitioner was arrested and booked into NWIPC on April 28, 2026, and has since remained in custody.  Dkt. 6, ¶14; Dkt. 7, Exs. 5 (Form I-213) & 7 (warrant for arrest and notice of custody determination).

Petitioner maintains that he fully complied with every condition of his parole and that, prior to the April 2026 arrest, he had never been informed of any issues with his compliance. *See* Dkt. 1-2, ¶¶9-15.  He notes a single anomaly, during the last home visit shortly before his arrest, in which an ICE officer's app was malfunctioning and not able to capture and upload his photo, and he was advised to report the issue at his upcoming appointment.  *Id*., ¶¶12-13. Petitioner asserts that, at the time of his arrest, he was not provided any details regarding the alleged violations or any opportunity to address them.  *Id*., ¶16.  He notes that he has no criminal record.  *Id*., ¶17.

Respondents assert that, on June 4, 2026, Petitioner appeared pro se at an individual calendar hearing before the Tacoma Immigration Court, where the IJ found his testimony not credible, denied all forms of relief, and ordered Petitioner removed to Venezuela.  Dkt. 6, ¶15. They further assert that Petitioner reserved appeal, and that a notice of appeal is due to the Board of Immigration Appeals (BIA) by July 6, 2026.  *Id*., ¶16.  They do not provide any documentation relating to a June 2026 IJ finding.

### III.   LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *Yildirim v. Hermosillo*, No. C25-2696-KKE, 2026 WL 111358, at *1 (W.D. Wash. Jan. 15,

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 4

2026). "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief," and may dispose of habeas matters "as law and justice require." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013); 28 U.S.C. § 2243.

## IV.   DISCUSSION

Petitioner asserts that his continued detention is unlawful because Respondents failed to articulate any statutory authority that justifies re-detaining him as required by 8 C.F.R. § 212.5(e), re-detained him in violation of his Fifth Amendment right to procedural due process, and continue to detain him in violation of his right to substantive due process. Dkt. 1 at 2-3. He raises a single cause of action alleging violation of the Due Process Clause of the Fifth Amendment. *Id.* at 10-11. Respondents argue that Petitioner's detention is statutorily authorized pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii) and fully consistent with due process. *See* Dkt. 5.

A.   Detention Authority

Section 1225 authorizes the Government to detain certain noncitizens seeking admission into the United States. *See Jennings v. Rodriguez*, 583 U.S. 281, 287-89 (2018). Section 1225(b) "applies primarily to [noncitizens] seeking entry into the Unites States ('applicants for admission' in the language of the statute)." *Id.* at 297. Noncitizens are considered "applicants for admission" to the United States when they "arrive[]" in the United States or are "present" in this country but have "not been admitted." 8 U.S.C. § 1225(a)(1). "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 287.

Section 1225(b)(1) applies to noncitizens who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.* (citing

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 5

§ 1225(b)(1)(A)(i)).  Noncitizens who fall under § 1225(b)(1) are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Id.* (citing § 1225(b)(1)(A)(i)).  Section 1225(b)(2) is broader and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)[.]" *Id.*  Applicants for admission under either § 1225(b)(1) or § 1225(b)(2) are subject to mandatory detention.

However, noncitizens subject to detention under either sub-section of § 1225(b) may be temporarily released on humanitarian parole. *See id.* at 288.  Humanitarian parole is authorized under 8 U.S.C. § 1182(d)(5)(A).  Section 1182 provides that parole may be granted "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]"  8 U.S.C. § 1182(d)(5)(A).  The implementing regulations include another requirement for parole:  the noncitizen must "present neither a security risk nor a risk of absconding[.]"  8 C.F.R. § 212.5(b).  In other words, if a noncitizen has been granted parole, it means that a DHS official with authority decided there were either "urgent humanitarian reasons" or "significant public benefit" justifying the parole of that individual, and that the individual did not pose a security or flight risk.

Parole terminates automatically upon a noncitizen's departure from the United States or, if the noncitizen has not departed, "at the expiration of the time for which parole was authorized[.]"  8 C.F.R. § 212.5(e)(1).  No written notice is required for automatic termination. *See id*.  Parole may also be terminated, with required written notice, "upon accomplishment of the purpose for which parole was authorized", or when a DHS official with authority decides that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States[.]"  8 C.F.R. § 212.5(e)(2)(i).  Upon termination of parole, the

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 6

noncitizen is restored to the status he had at the time of parole. *See Jennings*, 583 U.S. at 288; *see also* 8 C.F.R. §§ 212.5(e)(1), (e)(2)(i).

Respondents appear to argue that, under this statutory framework, Petitioner is lawfully detained because (1) he is an applicant for admission who was placed in expedited removal proceedings under § 1225(b)(1) shortly after entry into the United States, (2) his temporary humanitarian parole under § 1182(d)(5) has expired, (3) his status has now reverted to the status he had at the time of parole, *i.e.*, § 1225(b)(1), and (4) his current status mandates detention. *See* Dkt. 5 at 7-8. Respondents further assert that Petitioner's procedural due process claim fails because Petitioner had no protected liberty interest in remaining at large at the time of his re-detention. *See id*. at 9. However, as courts in this district have recognized, the fact that the government may believe it has a valid reason to detain a noncitizen "does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1315, 1322 (W.D. Wash. 2025); *see also Zavorin v. Wamsley*, No. C26-0173-DGE, 2026 WL 309733, at *5 (W.D. Wash. Feb. 5, 2026). The Court thus turns to Petitioner's procedural due process claim.

B.    Procedural Due Process

The Fifth Amendment forbids the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965)). Due process is "flexible and calls for such procedural protections as the particular situation demands." *Id*. at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). It "applies to all 'persons' within the United States, including [noncitizens], whether

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 7

their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citations omitted).

The Supreme Court, in *Mathews*, established a three-part test for determining whether a particular government action comports with due process.  The *Mathews* test balances the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

In *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1211 (9th Cir. 2022), the Ninth Circuit assumed without deciding that the *Mathews* test applies in the immigration detention context, and courts in this District employ the framework in cases challenging re-detention under circumstances like those in this case.  *See, e.g.*, *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) (citing *E.A. T.-B.*, 795 F. Supp. 3d at 1321 n.4 (collecting cases employing the *Mathews* factors in similar immigration detention contexts)).  Here, both parties apply the *Mathews* framework to Petitioner's due process claim, *see* Dkts. 1 & 5, and the Court agrees it is applicable here.

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]"  *Mathews*, 424 U.S. at 335.  The Supreme Court has recognized that "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."  *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (the interest in not being detained

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 8

"is the most elemental of liberty interests").  The Supreme Court has also repeatedly recognized that "individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."  *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025).

Petitioner has a constitutionally protected interest in his continued liberty.  Indeed, courts in this district have repeatedly concluded that an individual such as Petitioner, who has been released on parole under § 1182(d)(5)(A), and has lived with relative freedom in the United States for a number of years, has a protected interest in not being detained.  *See, e.g., Yao v. Mullin*, No. C26-1599-BAT, 2026 WL 1596276, at *2 (W.D. Wash. June 4, 2026); *Kumar v. Noem*, C26-0294-SKV, 2026 WL 668335, at *4 (March 10, 2026); *Ramirez Tesara*, 800 F. Supp. 3d at 1136.

Respondents argue that Petitioner possessed, at most, a significantly diminished liberty interest given the expiration of his parole, and that any such interest was further diminished by his failure to appear for an immigration hearing and eighteen ADT violations.  However, as courts in this district have repeatedly found, Petitioner's constitutionally protected interest in his continued liberty did not expire along with his parole.  *See, e.g.*, *Faqeri v. Scott*, C26-0003-JHC, 2026 WL 194475, at *3 (W.D. Wash. Jan. 26, 2026) ("[J]ust because Petitioner may have a lesser liberty interest compared to others does not mean that Petitioner possesses no liberty interest in his continued freedom nor that his liberty interest was extinguished when his parole expired[.]"); *Ramirez Tesara*, 800 F. Supp. 3d at 1136-37 ("That the express terms of the parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide [an] individualized hearing prior to re-detaining the parolee.").  Courts have also repeatedly recognized this protected interest despite an alleged failure to

comply with conditions of parole. *See, e.g., Yao*, 2026 WL 1596276, at *3; *Kumar*, 2026 WL 668335, at *4-5; *Ramirez Tesara*, 800 F. Supp. 3d at 1137; *see also E.G.M. v. Scott*, No. C26-0744-KKE, 2026 WL 914803, at *5 (W.D. Wash. Apr. 3, 2026) "([T]his Court and others in this district and circuit have repeatedly found that a petitioner who misses an appointment or hearing is nonetheless entitled to a pre-deprivation hearing.") (citing cases).  Nor is the relevance of the missed immigration hearing clear given that an IJ subsequently granted Petitioner's motion to re-open his immigration case, and another year and a half passed before Petitioner was re-detained for alleged ATD violations. *See, e.g.*, *E.G.M.*, 2026 WL 914803, at *5 (rejecting argument that it was reasonable to believe a petitioner who had previously missed an immigration hearing would not appear at a pre-deprivation hearing if provided notice, where an IJ had rescinded an *in absentia* order following the missed hearing and the petitioner proceeded to appear for his ICE check-ins in the following years).  The first *Mathews* factor thus weighs in Petitioner's favor.

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the Petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335.  Respondents do not here deny that Petitioner did not receive any pre-deprivation process.  They assert that Petitioner received explicit warnings about a failure to comply with the conditions of his parole at the time of his ATD enrollment, that the violations discovered at the April 2026 check-in were "extensive, well-documented, and spanned more than a year[,]" and again note his failure to appear for the March 2024 immigration hearing. Dkt. 5 at 10.  They argue that requiring a pre-deprivation hearing for a noncitizen whose parole had already expired, who had repeatedly violated release conditions, and who had previously "absconded from proceedings" would

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 10

provide only marginal additional protection against error while imposing substantial administrative burden.

The "Form I-213" documenting the basis for Petitioner's re-detention on April 28, 2026, states that he was taken into custody at his "scheduled office visit" on that same date due to "generating 18 violations since being enrolled in ATD."  Dkt. 7, Ex. 5.  It does not reference the expiration of parole, the missed immigration hearing, or the IJ order granting Petitioner's motion to re-open his immigration case after that missed hearing.  *See id*.; *see also* Dkt. 6, ¶¶12-13.  The only other document provided to support the alleged ATD violations consists of a list containing Petitioner's name and the dates and "types" of violations.  Dkt. 7, Ex. 6.  It provides no further detail and shows that all but one of the alleged violations occurred after Petitioner's parole is said to have expired in October 2024.  *See* Dkt. 7, Ex. 6.  And, finally, the arrest warrant does not mention ATD violations or any other basis for Petitioner's re-detention now asserted by Respondents, and instead states that the determination of probable cause was based on indicia that Petitioner "either lacks immigration status or notwithstanding such status is removable under U.S. immigration law."  *Id*., Ex. 7.

Respondents do not explain why no action was taken prior to April 2026, despite the apparent expiration of Petitioner's parole a year and a half earlier, eighteen violations alleged to have occurred over the course of more than two years, and the missed immigration hearing.  Nor do Respondents dispute Petitioner's assertions that he had not been advised of any violations prior to the April 2026 check-in and was not provided any details regarding the alleged violations or any opportunity to address them prior to his re-detention.  The record before the Court therefore shows that ICE re-detained Petitioner "at a routine check-in based solely on internal ATD entries, without prior written notice, without specifying the alleged violations in

advance, and without any meaningful opportunity to be heard[.]" *Lnu v. Hermosillo*, No. C26-635-MLP, 2026 WL 691944, at *2 (W.D. Wash. Mar. 11, 2026).  Under these circumstances, the risk of erroneous deprivation is high, and a brief, neutral pre-deprivation custody hearing would have significant value in testing the legal and factual basis for custody.  *See Ramirez Tesara*, 800 F. Supp. 3d at 1137; *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *see also Lnu*, 2026 WL 691944, at *2 ("Proceeding on untested contractor and agency records, with no mechanism for explanation or correction, creates a significant risk of error.").  Accordingly, the second *Mathews* factor also favors Petitioner.

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.  As Respondents suggest, the Government has an interest in enforcing immigration laws and securing removal of noncitizens, *see Rodriguez Diaz*, 53 F.4th at 1208, and in ensuring a noncitizen appears at future immigration proceedings and does not pose a danger to the community, *see Zadvydas,* 533 U.S. at 690.  However, the Government's interests would not have been hindered by providing Petitioner with individualized pre-deprivation process.  Custody and bond hearings already occur regularly within the existing immigration system, and courts have repeatedly found the incremental administrative burden of such hearings modest relative to the risk and consequences of erroneous detention.  *See, e.g., E.A. T. B.*, 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").  The third *Mathews* factor therefore favors Petitioner as well.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 12

In sum, all three *Mathews* factors weigh in Petitioner's favor.  Respondents' re-detention of Petitioner without providing him "an opportunity to be heard at a meaningful time and in a meaningful manner[,]" *Mathews*, 424 U.S. at 333, violates the due process protections afforded him by the Constitution.  As Petitioner has established that he is in custody in violation of the Constitution, he is entitled to habeas relief under § 2241.  Petitioner must therefore be released from custody.

C.    Remaining Claims and Requests for Relief

As noted above, Petitioner also argues that Respondents lacked a justification for re-detaining him under 8 C.F.R. § 212.5(e), and that his continued detention violates his right to substantive due process.  *See* Dkt. 1 at 2-3.  The Court does not reach these remaining arguments because the requested relief is duplicative of that ordered under *Mathews*.  The Court therefore turns to Petitioner's remaining requests for relief.

In addition to his release, Petitioner asks the Court to enjoin Respondents from re-detaining him absent prior written notice and a hearing at which Respondents must prove by clear and convincing evidence that he is a flight risk or a danger to the community, and that no alternatives to detention would mitigate those risks.  *See id*. at 11.  However, Petitioner does not engage with the elements required for such forward-looking injunctive relief or provide legal authority specifically addressing that relief.  Any such relief is therefore not warranted on his showing.

Petitioner also asks that Respondents be ordered to return his property, including, but not limited to, his Washington driver's license and his employment authorization document.  *See id*.  However, Petitioner does not provide factual support or any argument related to this request in

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 13

his petition.  *See generally* Dkt. 1.  Because the Court does not have an independent reason to believe NWIPC will impermissibly retain Petitioner's property, this request is also denied.

Petitioner, finally, asks that the Court award attorney's fees, including any fees authorized under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412.  The Court will, as reflected below, entertain any post-judgment motion for attorney's fees.

## V.    CONCLUSION

For the foregoing reasons, the Court GRANTS the habeas petition, Dkt. 1, and ORDERS that Petitioner be RELEASED from immigration detention within **twenty-four (24) hours** under the conditions of the parole agreement in effect at the time of his re-detention.  Respondents shall file a certification with the Court within **forty-eight (48) hours** that Petitioner has been released.  Any fee petition shall be filed within the deadlines set by the EAJA, 28 U.S.C. § 2412.

Dated this 9th day of July, 2026.


S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 14